# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ANTONIO FITZGERALD COX,               §
                                      §
         *Petitioner*,                §
                                      §
v.                                    §        CIVIL ACTION H-12-2776
                                      §
WILLIAM STEPHENS,                     §
                                      §
         *Respondent*.                §


## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition

challenging his convictions for two counts of aggravated assault.  Respondent filed a motion

for summary judgment (Docket Entry No. 18), to which petitioner filed a response (Docket

Entry No. 23).

Based on careful consideration of the pleadings, the motion, the response, the record,

and the applicable law, the Court GRANTS the motion for summary judgment and

DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of two counts of aggravated assault and sentenced to twenty-

seven years incarceration on August 17, 2007.  The convictions were affirmed on appeal.

*Cox v. State*, Nos. 14-07-00696-CR and 14-07-00697-CR, 2009 WL 807491 (Tex. App. –

Houston [14th Dist] 2009, no pet.).  Petitioner did not seek discretionary review.  Petitioner

filed his applications for state habeas review with the state trial court in April of 2010; the applications were not forwarded to the Texas Court of Criminal Appeals until May 22, 2013, where they remain pending as of this date.   Petitioner filed the instant federal habeas petition no earlier than September 13, 2012.

Petitioner raises the following claims for federal habeas relief:

1.   Trial counsel was ineffective in failing to adequately investigate the case, call witnesses, or prepare for trial;

2.   The trial court erred by making improper comments during voir dire;

3.   The trial court erred in admitting extraneous offense evidence;

4.   The State improperly struck jurors based on race;

5.   He was denied a speedy trial; and

6.   Appellate counsel was ineffective in not raising the above issues.

Respondent argues that these claims are unexhausted, procedurally barred, and without merit.   The Court will consider petitioner's grounds without regard to exhaustion, as they are without merit.

*Factual Background*

The intermediate appellate court set forth the following statement of facts in its opinion affirming the convictions:

On December 31, 2004, the complainants, Wonda Harris and her son Jeremy, noticed appellant congregating with other men in a vacant lot directly across the street from the complainants' home.

2

After seeing appellant drinking and shooting his gun into the air, Jeremy contacted the police.  Apparently in retaliation, appellant later returned to the complainants' house with a gun.  He made vulgar and disparaging remarks about Wonda, prompting Jeremy to 'rush at' appellant.  Appellant shot Jeremy in the leg, fracturing the teen's femur, and then shot Wonda in the chest. Wonda and Jeremy were transported to the hospital, and both recovered from their injuries.  Police officers arrived at the scene and, after a struggle, eventually subdued appellant, who was described as 'combative.'  It was determined that, at some point, appellant had received a fresh laceration consistent with a 'stab wound.'

*Cox*, at *1.

### The Applicable Legal Standards

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U .S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Harrington v. Richter*, ___U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

3

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant

probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### Trial Court Error During Voir Dire

Petitioner contends that the trial court showed bias and prejudice against him and denied him his constitutional presumption of innocence and his right not to testify.  In support, he refers the Court to the following statements made by the trial court during its voir dire of the jury panel:

> COURT:     [T]he State goes first because they've got the burden of proof. They bring in their witnesses to testify, then the Defense gets to cross-examine the State's witnesses. *After the State's finished putting on their evidence, the Defense can call witnesses.*

> *The defendant has the same subpoena power as the State does to call anyone who may know anything about the case.*

(Docket Entry No. 1, Exhibit F, petitioner's original emphasis.)

COURT:     And I will also tell you that if the defendant chooses not to testify, as is his right under the Constitution, you will get an instruction from me in that jury charge that says you cannot use that fact as evidence against him.  Okay?  Now, am I surprising you with that?

VENIREPERSON:  No.

COURT:     I am sure that you have all been very familiar with that Fifth Amendment thing possibly since your junior high civics days, if not sooner. And you may be thinking to yourself, well, you know, I am very proud of the fact that we have that law, written that way, in our Constitution.  I wouldn't change a thing about it if I had the opportunity to make that decision myself because it is a very important part of our system of justice here in America.

But, you know, that being said, truth be known, *if I was not guilty of something that I was charged with and a grand jury indicted me anyway and I had to answer in a courtroom just like this to people who didn't know me, you couldn't keep me from testifying because whatever I would say would be the truth, the jury would believe me, there would be absolutely no question that I couldn't answer on cross-examination, no, I – and they would find me not guilty because I was not guilty.  So I really don't care what the law says.  I don't understand for the life of me why somebody who wasn't guilty wouldn't testify, right?*

VENIREPERSON:  Wrong.

COURT:     Right.  May be wrong.  Okay.  If you want to not testify and you get charged with an offense, have at it, or if you want to testify  if you are charged, have at it.  That's your choice to make.  *Some people think, you know what?  If I were not guilty, I sure would testify.  So, I don't understand for the life of me why somebody wouldn't.  Okay.  Okay.  Think of it in these terms.*

The law says something different.  *The law says if a defendant chooses not to testify, you, the jury, cannot hold it against him or her because [of] two*

6

*big, big reasons*.   First of all, there is a thousand reasons that somebody wouldn't want to testify that has absolutely nothing to do with whether they are guilty or not guilty; and, secondly, it all relates back to the burden of proof.   *But can you-all think of any reason why somebody wouldn't want to testify that bears no relationship whatsoever to whether they are guilty or not guilty?*

*Id*., Exhibit G (petitioner's original emphasis).   Although petitioner in his pleadings ends his argument at that point, the record shows that the trial court continued its discussion, as follows:

VENIREPERSON:  You have to answer every question put to them.

COURT:      You have to answer every question put to them.  That's a good point.  You just don't get up there and say what you want to say and be done.  You get to answer questions from the other side.  And that's sometimes a little more difficult than you might imagine.  Fair enough.

Anybody else have any other ideas why somebody would cho[o]se not to testify that has nothing to do with whether they are guilty or not guilty?  Does anybody here just know an obnoxious person that you just don't like to talk to –

VENIREPERSON:  Yes.

COURT:      – in your life?  Okay.  You know who I am talking about and you are lucky if you only know one person like that in your lifetime . . . .  Do you see that that person probably wouldn't make a great impression on 12 strangers?

VENIREPERSON:  Yes.

COURT:      Okay.  Anybody else have any other ideas? . . . No?  Too hot outside to talk?

VENIREPERSON:  Language difficulty.

COURT:      Language difficulty.  Some people just are not – don't speak English as their first language or . . . [n]ot a communicator.  Fair enough?

> VENIREPERSON: The way questions are worded, the response is not necessarily the truth.
>
> COURT:        That's another way of saying that the lawyers can sometimes twist your words, right?
>
> VENIREPERSON: Right.

(Docket Entry No. 8-18, pp. 32–33.)  The trial court discussed additional reasons why a defendant may not wish to testify at trial.  *Id.*, pp. 34–37.  The trial court emphasized in its summation to the veniremembers that they were not to consider a defendant's decision not to testify:

> COURT:        So we don't want you to hold it against the defendant and it may be human nature to think, you know what? I am curious about why somebody wouldn't want to testify. And that's fine.  That's simply human nature.  That's the way we are.  But what we don't want you to do is say, You know what? The State didn't prove their case and didn't prove the defendant guilty, but the defendant didn't testify; so, I am going to go ahead and find him guilty anyway.  That's violating the law.  Okay.
>
> So, could everybody follow the rule that says that if the defendant doesn't testify, you won't hold it against him?
>
> THE PANEL:        Yes.

*Id.*, p. 38.

Petitioner's argument relies on statements made by the trial court taken out of context. When placed back in context of the trial court's entire discussion, the statements clearly evince the trial court's goal to uphold, not undermine, petitioner's presumption of innocence and his right not to testify.  What petitioner sees as prejudicial comments were, in fact, the

trial court's efforts to recognize and neutralize common examples of faulty reasoning harbored by potential jurors.

Neither petitioner nor the record establishes that the trial court was biased or prejudiced against petitioner during voir dire, or that it violated petitioner's rights to a presumption of innocence and to not testify at trial. No grounds for federal habeas relief are shown, and respondent is entitled to summary judgment dismissal of these claims.

*Improper Extraneous Offense Evidence*

Petitioner complains that, during the guilt-innocence phase of trial, the trial court improperly allowed into evidence extraneous offense evidence of third party threats. He claims that the hearsay evidence was highly prejudicial with no probative value, and that it violated his confrontation protections.

Petitioner raised these arguments on direct appeal. In considering and rejecting these arguments, the intermediate state court of appeals held as follows:

> Appellant's remaining two issues deal with the admission of evidence of threats made against the complaining witnesses, were they to testify against appellant at trial. Specifically, Jerome Harris – Jeremy's brother – testified that, after appellant was arrested, appellant's daughter drove past the complainants' house, holding a handgun and threatening 'to shoot [their] house up.' In addition, Jeremy's father, Fred Shepherd, similarly testified that one of appellant's friends – a man referred to only as 'Black' – drove by the complainants' house and promised to 'kill [them] all' should appellant be convicted. Appellant objected to both witnesses' testimony. On appeal, in his third issue, appellant contends this testimony was inadmissible under Rule 404(b) – as irrelevant extraneous-offense evidence – and Rule 403, because the evidence was unfairly prejudicial.

A. <u>Relevance and Unfair Prejudice</u>

Generally, we review a trial court's admission of evidence under an abuse of discretion standard. A trial court does not abuse its discretion if its evidentiary ruling was within the 'zone of reasonable disagreement' and was correct under any legal theory applicable to the case. Because the trial court is usually in the best position to decide whether evidence should be admitted or excluded, we will uphold its ruling unless its determination was so clearly wrong as to lie outside the zone within which reasonable persons might disagree.

Evidence of other crimes, wrongs or acts may be admissible under Rule 404(b) if the evidence has relevance apart from character conformity, such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Tex. R. Evid. 404(b). This list of permissible uses is illustrative, but not exhaustive.

Initially, the State asserts that Rule 404(b)'s exclusionary provision does not apply because the evidence pertained to the acts of third parties, and not the appellant. However, in 2002, the Court of Criminal Appeals urged a broader reading of Rule 404(b) to include those acts of third parties that may reflect on the character of the accused. It is questionable whether the testimony about threats implicated appellant's character, so as to invoke Rule 404(b), because, as both parties acknowledge, there was no evidence indicating appellant knew about – much less prompted – the threats against the complainants' family. In this case, we need not decide whether the evidence of third-party acts falls within Rule 404(b)'s coverage, because we hold that the proffered evidence was relevant apart from any tendency to show character conformity, anyway.

The Court of Criminal Appeals has repeatedly held that evidence of threats against a witness may be admissible to explain the witness's prior inconsistent statements or testimony. As the Court of Criminal Appeals explained in *Antwine*:

> [I]t appears that the testimony in question here was elicited on redirect examination by the prosecutor after the appellant, on cross examination of this witness, had established that she had, at a prior trial, refused to testify on the grounds of self incrimination. On redirect examination the prosecutor was allowed to show that the witness was in jail at the time she exercised this right and that persons in jail had threatened to hurt or kill her when she returned to jail if she testified against the

> appellant. From this it appears that the testimony was allowed to
> enable the witness to explain why she had refused to testify at a prior
> trial after the appellant had injected this prior act as an attempt to refute
> and discredit her testimony. The trial judge properly allowed this
> explanation. 'The defendant or any other witness is entitled to explain
> any fact tending to create a distrust of his integrity or truthfulness.'

The State did not introduce the evidence in question during its case-in-chief.
Instead, the evidence of threats was offered during appellant's case-in-chief,
after appellant sought to discredit Wonda's and Jeremy's testimony that they
were the only members of the Harris household who were present at the time
of the shooting. To accomplish this end, appellant called Jeremy's twin
brother, Jerome Harris, who testified that he and his father were also present
during the shooting. Appellant also called the twins' father, Fred Shepherd,
to testify. Fred insisted he was not at home at the time; however, appellant
presented other evidence indicating that Fred had previously admitted to
witnessing the shooting. Then, during closing argument, appellant's counsel
stressed that this inconsistency raised questions about Wonda's and Jeremy's
credibility.

We hold that the evidence of threats against the Harris family was relevant to
explain the inconsistencies in the witnesses' testimony. Evidence of threats
against any witnesses to the shootings would tend to explain Wonda's and
Jeremy's motivation to potentially understate the number of their family
members that, in fact, may have witnessed the shootings. Therefore, Rule
404(b) would not exclude this evidence of threats, which was relevant apart
from any tendency to demonstrate character conformity. Our analysis does not
necessarily end there, however, because evidence that satisfies Rule 404(b)
may still be inadmissible under Rule 403 if its probative value is substantially
outweighed by the danger of unfair prejudice.

Rule 403 provides that evidence, although relevant, may still be 'excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence.' TEX. R.
EVID. 403. The presumption is that relevant evidence will be more probative
than prejudicial. A trial court that undertakes a Rule 403 analysis must balance
the inherent probative value of the proffered evidence and the proponent's
need for the evidence, against the following counterfactors:

• the likelihood that presentation of the evidence will be cumulative or will consume an inordinate amount of time; and

• any tendency of the evidence to suggest [a] decision on an improper basis, to confuse or distract the jury from the primary issues, or to be given undue weight by a jury not properly equipped to evaluate its probative value.

We hold that the trial court, after balancing these considerations, could reasonably have concluded that Rule 403 did not mandate exclusion of the evidence of threats.

1.    Probative Value

This factor focuses on 'the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable.' Inherently, evidence that a witness has been threatened by a third person is not necessarily probative, in and of itself, of whether a defendant has committed the charged offense.  In this case, however, the prosecution offered two witnesses to the shooting:  Wonda and Jeremy.  Both claimed they were the only two witnesses to the aggravated assault.  Therefore, to establish that the charged offense had occurred, the State's case-in-chief depended upon the jury's believing their testimony.  Therefore, the trial court reasonably could have concluded that the evidence that the two key eyewitnesses had been threatened, which would explain inconsistencies in their testimony, was indirectly probative of all of the elements of the charged offense.

2.    State's Need for the Evidence

This factor 'encompasses the issues of whether the proponent has other evidence establishing this fact and whether this fact is related to a disputed issue.'  Here, the prosecution offered two eyewitnesses to prove the appellant's commission of a crime, and appellant's counsel impeached the credibility of both witnesses by demonstrating inconsistencies in their testimony.  In this case, then, the trial court reasonably could have concluded that the State's need for the testimony about threats – the only evidence available to explain the witnesses' inconsistent accounts of who was present during the shooting – was considerable.  Therefore, we conclude this factor also weighs in favor of admissibility.

12

3.    Undue Delay and Needless Presentation of Cumulative Evidence

This factor examines the time necessary for the proponent to develop and present the evidence, during which the jury will be distracted from considering the charged offense.  In this case, the evidence of threats that was presented to the jury consumes all of forty-three lines of testimony, that is, less than two complete pages in the record.  Therefore, the trial court reasonably could have concluded that it was unlikely that presentation of this evidence would consume an inordinate amount of time.  In addition, because each witness testified to threats made by a different person, the trial court could fairly conclude that the presentation of evidence would not merely repeat evidence already admitted.

4.    Unfair Prejudice and Confusion of the Issues and/or Jury

Rule 403 does not exclude all evidence that may be prejudicial to a party but, instead, only that which poses a danger of 'unfair' prejudice.  Unfair prejudice refers to the tendency that relevant evidence may tempt a jury into finding guilt on an improper basis, for reasons apart from proof of the offense.  Here, because there was no evidence linking appellant to the threats, the danger of unfair prejudice to the appellant was low.

In balancing the inherent probative value of the evidence and the State's need for the evidence against Rule 403's counterfactors, the trial court reasonably could have concluded that the evidence was not unfairly prejudicial and did not have a tendency to suggest a decision on an improper basis or to confuse or mislead the jury. Therefore, we cannot say the trial court abused its discretion by overruling appellant's Rule 403 objection. We overrule appellant's third issue.

B.    Confrontation Clause

Finally, appellant devotes his fourth issue to arguing that the admission of evidence of 'Black's' threat against the complainants' family deprived appellant of his constitutional right to confront witnesses against him. Generally, the Confrontation Clause bars the admission of out-of-court 'testimonial' statements, unless the (1) declarant is unavailable to testify, and (2) the defendant had a previous opportunity to cross-examine the declarant.

13

As a threshold matter, we must determine whether the statement in question is testimonial or nontestimonial in nature.  We review a constitutional legal ruling, including whether a statement is testimonial, under the *de novo* standard of review.  The determination of whether a statement is testimonial is decided 'by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant.'

The statement in question consists of an out-of-court threat uttered by 'Black' to the Harris family.  Specifically, 'Black' is said to have remarked, while driving past the Harris's home, that '[i]f something happened to [appellant] that he was going to . . . kill [them] all.'  Appellant asserts that this statement is 'testimonial' in nature, but appellant offers no explanation or analysis to support that opinion.  We disagree with appellant's conclusion.

Generally, a statement is considered to be 'testimonial' if it was a solemn declaration made for the purpose of establishing some fact.  Although the United States Supreme Court declined to explicitly define the term 'testimonial' in *Crawford*, it described a 'core class of testimonial statements' that includes (1) *ex parte* in-court testimony, (2) affidavits, (3) depositions, (4) confessions, (5) custodial examinations, and (6) statements made under circumstances that would lead an objective witness to reasonably believe that the statement could be used at a later trial.

The statement in question was not made to a police officer or court official but, rather, was uttered to Fred Shepherd under circumstances that would not lead an objectively reasonable witness to believe that the statement would be available for use later at trial.  In similar settings, other Texas courts have concluded that such statements were not 'testimonial' in nature.

We conclude the testimony does not fall within any of the classes of testimonial statements described in *Crawford*.  Therefore, we hold the trial court did not violate appellant's constitutional confrontation right by admitting evidence of the threat made by 'Black.'  We overrule appellant's fourth issue.

*Cox*, at *1–8 (citations, footnotes omitted).

Although petitioner did not seek discretionary review of this issue by the Texas Court

of Criminal Appeals, this Court finds no fault with the above analysis of the state appellate

14

court. For claims that were adjudicated on the merits in state court, deference to the state court's decision is required unless the adjudication was "contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An independent review of the record shows that petitioner fails to meet his burden of proving a violation of his federal confrontation rights, and federal habeas relief is unwarranted.[1]

Nor does petitioner establish entitlement to habeas relief on his claim that the extraneous offense evidence was inadmissible under state law. Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) ("Errors of state law, including evidentiary errors, are not cognizable in habeas corpus."); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983) ("We have repeatedly admonished that we do not sit as a super state supreme court on a habeas corpus proceeding to review error under state law."). Instead, the only relevant inquiry is whether the admission of this

---

[1]It is unclear whether petitioner is attempting to raise a claim for prosecutorial misconduct regarding the State's use of the extraneous offense evidence. (Docket Entry No. 2, pp. 12–14.) Such a claim would be without merit, as the trial court's admission of the evidence was upheld on direct appeal. Further, petitioner's allegation that the State knew the evidence was false, fabricated, and misleading is conclusory and unsupported in the record.

testimony violated petitioner's federal constitutional rights.  *See Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

To the extent petitioner claims that the evidence denied him due process, the Supreme Court recognizes that admission of evidence may constitute a due process violation if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).  According to the Fifth Circuit, an extraneous offense may be admitted into evidence without violating due process if the State makes a "strong showing that the defendant committed the offense" and if the extraneous offense is "rationally connected with the offense charged."  *Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991).  Even so, the erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the petitioner's conviction, *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998), and had a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Janecka v. Cockrell*, 301 F.3d 316, 328–29 (5th Cir. 2002).

The Court has carefully reviewed the record as a whole, and concludes that admission of the extraneous offense evidence did not give rise to a due process violation.  Even assuming admission of the evidence constituted error, the evidence was not a crucial, highly significant factor in the conviction, nor can it be said that it had a substantial and injurious effect or influence in determining the jury's verdict.  Habeas relief is unwarranted, and respondent is entitled to summary judgment dismissal of these claims.

*Speedy Trial*

Petitioner asserts that he was in pretrial detention for two years and seven months before proceeding to trial, in violation of *Barker v. Wingo*, 407 U.S. 514 (1972). He claims that he was prejudiced by this delay because Houston police officer K. Wagner was called to active military duty during the delay and his testimony was needed to develop a defense.

Respondent correctly argues that this issue is procedurally barred because petitioner failed to raise it on direct appeal. *See Ex parte Owenby*, 749 S.W.2d 880, 881 (Tex. Crim. App. 1988); *see also Clark v. State of Texas*, 788 F.2d 309, 310 (5th Cir. 1986). Regardless, petitioner's argument is without merit.

In *Barker*, the Supreme Court identified four factors for assessing Sixth Amendment speedy trial claims: (1) length of the delay, (2) the reason for the delay, (3) defendant's diligence in asserting his speedy trial rights, and (4) prejudice to defendant caused by the delay. Delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the State. *See Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994). Unexplained or negligent delays weigh against the State, "but not heavily." *Id*.

The record here shows that approximately two years and seven months expired from the filing of the criminal complaint (January 2005) to the commencement of trial (August 2007). *See Divers v. Cain*, 698 F.3d 211, 217–18 (5th Cir. 2012). During that time, petitioner agreed to eleven continuances,[2] and moved for a continuance the day of trial. In

---

[2] C.R. at 12, 13, 14, 15, 16, 17, 27, 43, 114, 141, and 160.

his final written agreed reset, dated November 2, 2006, petitioner agreed to an April 23, 2007, trial setting.  C.R. at 160.  Although petitioner filed four *pro se* motions for a speedy trial from December 2005 to June 2006, during the time he was represented by counsel, he signed the agreed reset form on November 2, 2006, and filed a *pro se* discovery motion in June 2006, shortly before he filed his fourth and final *pro se* request for a speedy trial. Otherwise, the eleven agreed reset forms in the record encompass substantially all of the period of time from February 3, 2005, through April 23, 2007.  The only delay not attributable to, or without the written agreement of, petitioner or his counsel appears to be the three-month delay between the April 2007 trial setting and the commencement of trial in August 2007.  C.R. 222.  A three-month delay does not raise federal speedy trial concerns. *See Goodrum v. Quarterman*, 547 F.3d 249, 257–58 (5th Cir. 2008) ("As the Supreme Court has observed, courts generally view a delay of approximately one year as sufficient to require a full *Barker* analysis. This is the rule in the Fifth Circuit.") (footnote omitted).  Petitioner does not establish that he was denied his right to a speedy trial under *Barker*.

Regardless, petitioner fails to demonstrate that his defense was prejudiced by any delay.  Although petitioner complains that, as a result of the delay, he was unable to investigate or call as a witness Officer Wagner, his claim of prejudice is not supported in the record.  The record shows that counsel unsuccessfully moved for a continuance the day of trial based on Wagner's unavailability; counsel did not, however, make any showing that Wagner's testimony was essential for the defense.  (Docket Entry No. 1-3, Exhibit C.)  Nor

does petitioner present any probative summary judgment evidence establishing that he was prejudiced by Wagner's unavailability for trial.  Petitioner's bald assertions of how Wagner would have benefitted his defense are conclusory, unsupported in the record, and fail to raise a genuine issue of material fact precluding summary judgment.

Petitioner fails to show that his federal speedy trial rights were violated.  Habeas relief is unwarranted, and respondent is entitled to summary judgment dismissal of this claim.

### *Batson Error*

Petitioner next contends that the State violated *Batson v. Kentucky*, 476 U.S. 79, 85 (1986), by using six of its ten peremptory strikes on black veniremembers.  As correctly argued by respondent, petitioner was required, but failed, to raise this issue on direct appeal, and the issue has been procedurally defaulted.  *See Busby v. Dretke*, 359 F.3d 708 (5th Cir. 2004); *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998).  Regardless, the claim lacks merit.

The Fourteenth Amendment's equal protection clause prohibits purposeful racial discrimination by the State in its use of peremptory strikes.  To assert a *Batson* challenge, a defendant must establish a prima facie case of purposeful discrimination in the State's use of peremptory strikes.  To establish a prima facie case, a defendant must show that (1) he is a member of a cognizable racial group, (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race, and (3) these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges

to exclude the veniremembers on account of their race.  Thereafter, the burden shifts to the State to come forward with a racially neutral explanation for challenging the jurors in question. The burden to show purposeful discrimination then shifts back to the defendant to impeach or refute the neutral explanation or show that it was merely a pretext.

A review of the record in the instant case shows that trial counsel raised a *Batson* motion during trial, as follows:

DEFENSE COUNSEL:     Your Honor, now comes the defendant, Antonio Cox, by and through his attorney of record, and moves pursuant to *Batson v. Kentucky*, equal protection clause delineated therein, as to whether the State – equal protection – and so that the applicable provision of the Texas Code of Criminal Procedure that deals with the *Batson* – and I don't have it in front of me or I would state that further – and makes the following showing.

First of all, my client, Antonio Cox, is of African descent and that the jury as currently composed, includes one African – Afro/American female and that was Juror No. 51, but that in the available pool of jurors who was not excluded by reasons of cause was Juror No. 11, Mr. [D.W.], who is a black male.  He was struck by the State.  Juror No. 13 –

THE STATE:          I didn't strike him.

DEFENSE COUNSEL:     – [C.D.] –

THE STATE:          I didn't strike him.

DEFENSE COUNSEL:     I am sorry.

THE COURT:          You struck him.

DEFENSE COUNSEL:     I am sorry.  Juror No. 14, Juror [J.L.], who is a black female, who was struck by the State.  Juror No. 22, [K.R.B.], who is a black male, who was struck by the State. Juror No. 44, [L.S.], who is a black male, who was also struck by the State.  And Juror No. 48, who is a black male, who was also struck by the State and –

THE STATE:          I didn't strike –

DEFENSE COUNSEL:      First of all, let me do the math here.  That's one, two, three, four, five, that, first of all, State used 50 percent of – half of its strikes to eliminate black jurors, 50 percent of its total strikes, and of the number of blacks available in the pool of potential jurors, which by my – in addition to those, would have been Juror No. 10 and 13, that there were, by my account, seven available blacks.

So, I think that we eliminated 70 percent of the available blacks through their usage rights.  The record is clear that none of those jurors were asked any questions that in any way indicated any leniency one way or the other in favor of or against the State of Texas or for or in favor of the Defense, that there is no other way to explain this incredible high number of strikes on Afro/Americans except that it was racially motivated.

THE COURT:       Okay.  [Prosecution], tell me why you struck Juror No. 11, 14, 22 and 44 and 48?

THE STATE:          No. 11 had several bad checks.  Many, many, several bad checks.

THE COURT:       Okay.

THE STATE:          No. 14, when Alvin was asking about the criminal jury service, she didn't respond to him at all.  So, I have no idea what her verdict was, what – she just did not participate at all, knowing that she had been on a jury.  No. 22, during the jury process I – was arms crossed, looking really hostile to me when I was asking questions about – just wouldn't engage.  No. 45, Arceneaux said he had to wake her up in the jury room to get her over here.

DEFENSE COUNSEL:      [Number] 44?

THE STATE:          [Number] 45.  No. 44 did not fill out this card all the way.  She also didn't have any children and that's something that was important to me.

THE COURT:       Okay.

THE STATE:          Also, Judge, there were several African/American jurors that I did not strike that I had the chance to strike and [defense counsel] struck them.

THE COURT:          Okay.

THE STATE:          I also struck all the lawyers.  I mean, wasn't intentional.  It was –

THE COURT:          What about 48?

THE STATE:          I'm sorry?

THE COURT:          48.

THE STATE:          No. 48.  I didn't really know anything about him.  I didn't talk to him.  Most of the people I have on the jury, I know something about.

DEFENSE COUNSEL:     Judge, for the record, I did not realize that 45 was a black male.  That was not one of the ones I called out, but I would certainly have; so, I guess in the split of five of ten, it was actually six of ten strikes used on African/Americans, so.

THE COURT:          You told me about 45 and you told me about 44.

THE STATE:          48 is the janitor.

THE COURT:          I am sorry?

THE STATE:          Is a janitor.

THE COURT:          Okay.  I will find that the use of peremptory challenges is based on nonrace-related reasons and overrule your objection.

DEFENSE COUNSEL:     That's ridiculous.[3]

THE COURT:          Thank you.

---

[3]The intended target of this comment is unstated in the record.

(Docket Entry No. 8-19, pp. 63–67.)

The record shows that the burden shifted back to petitioner to impeach or refute the State's neutral explanations or show that they were merely a pretext. Petitioner did not meet this burden, and he failed to establish a *Batson* violation.

In the instant habeas proceeding, petitioner does nothing more than set forth his personal opinions and disagreements with the State's explanations for striking the janitor and the juror who sat with her arms crossed. The Fifth Circuit has recognized occupations and non-verbal signs of hostility as proper race-neutral reasons for the exercise of peremptory strikes. *See U.S. v. Wallace*, 32 F.3d 921 (5th Cir. 1994) (upholding denial of *Batson* ruling where one juror struck for not removing hat in courtroom and another struck for being a social worker); *see also Dillard v. Collins*, 12 F.3d 209 (5th Cir. 1993) (recognizing eye contact, behavioral demeanor, and low-income occupation as valid reasons for exercising peremptory strikes).

Petitioner presents no probative summary judgment of a sham or pretext. Absent evidence in the record, a court cannot consider a habeas petitioner's conclusory allegations on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Conclusory claims unsupported by specific facts in the record are subject to summary dismissal. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Petitioner fails to show that the trial court denied him equal protection in denying his *Batson* motion, and fails to demonstrate a violation of his equal rights protections.  Habeas relief is unwarranted, and respondent is entitled to summary judgment dismissal of this claim.

*Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson*

24

*v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

Petitioner asserts that trial counsel was ineffective in failing to adequately investigate the case, call witnesses, or prepare for trial.  Specifically, petitioner claims that trial counsel failed to investigate and call EMS personnel, a medical expert, a firearm expert, or timely investigate Officer Wagner.

Because these allegations have no evidentiary support in the record, they must be denied as meritless and conclusory.  As stated by the Fifth Circuit Court of Appeals,

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have

25

been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Petitioner has produced no probative evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense, and he fails to prove his claim. Nor does petitioner present probative summary judgment evidence that trial counsel did not investigate these individuals, and he fails to overcome the strong presumption that trial counsel's actions and decisions were reasonable strategic and tactical professional decisions. *See Green*, 160 F. 3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Petitioner fails to demonstrate ineffective assistance of counsel, and habeas relief is unwarranted. Respondent is entitled to summary judgment dismissal of this claim.

### Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170

(5th Cir. 1998).  Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice.  That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different.  *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998).  Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal.  *Evitts*, 469 U.S. at 394.  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Evitts*, 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.

Petitioner complains that his court-appointed counsel on appeal failed to raise the issues presented in this habeas proceeding.  Petitioner contends that, but for counsel's failure to raise these issues on appeal, there is a reasonable probability that the result of his appeal would have been different.

The Court has found that the issues raised by petitioner in this proceeding are without merit.  Accordingly, appellate counsel was not ineffective in failing to raise these meritless issues.  Because petitioner identifies no meritorious issues that counsel should have raised on direct appeal, habeas relief is unwarranted.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 18) is GRANTED.

The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH

PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are

DENIED AS MOOT.

Signed at Houston, Texas on July 12, 2013.

Gray H. Miller
United States District Judge

28